UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALERIE SMITH,

     Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

     Defendant.

Civil Action No.: 16-14041
Honorable George Caram Steeh
Magistrate Judge Elizabeth A. Stafford

_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 10, 11]**

  Plaintiff Valerie Smith appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- Smith's motion [ECF No. 10] be **DENIED**;
- the Commissioner's motion [ECF No. 11] be **GRANTED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Smith's Background and Disability Applications

Smith was born on July 27, 1966, making her 46 years old on her alleged onset date of May 18, 2013. [ECF No. 8-5, Tr. 162]. She applied for disability benefits in December 2013 and is insured for DIB purposes through December 31, 2018. [*Id.*; ECF No. 8-2, Tr. 19]. Smith has at least a high school education, and past relevant work as an office assistant and office manager. [ECF No. 8-2, Tr. 24-25]. She alleged disability due to mental illnesses, including post-traumatic stress disorder (PTSD), major depressive disorder, anxiety, paranoia and suicidal ideation. [ECF No. 8-6, Tr. 194].

After the Commissioner denied her disability application initially, Smith requested a hearing, which took place in July 2015, during which she and a vocational expert (VE) testified. [ECF No. 8-2, Tr. 34-88]. In a January 28, 2016, written decision, the ALJ found Smith to be not disabled. [*Id.*, Tr. 26]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Smith timely filed for judicial review. [*Id.*, Tr. 1-3; ECF No. 1].

### B. The ALJ's Application of the Disability Framework Analysis

DIB is available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Smith was not disabled. At the first step, he found that she had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 8-2, Tr. 19]. At the second step, the ALJ found that Smith had the severe impairments of depression with anxiety. [*Id.*]. Next, the ALJ concluded that none of the impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 20-21].

Between the third and fourth steps, the ALJ found that Smith had the RFC to perform a full range of work at all exertional levels, but with nonexertional limitations:

> [T]he claimant needs to avoid hazards including work at unprotected heights and work around dangerous moving machinery. She must not climb ladders, scaffolds, and ropes and must not drive in the course of employment. The claimant has the ability for, but is restricted to unskilled work, meaning [she] needs work that requires little or no judgment to do simple

4

duties that can be learned on the job in a short period of time. She must not work with the general public or have more than occasional contact with coworkers or supervisors. The claimant requires employment with no fast production pace work where the pace is set by others.

[*Id.*, Tr. 22].

At the fourth step, the ALJ concluded that Smith could not perform her past relevant work. [*Id.,* Tr. 24]. At the final step, after considering Smith's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that Smith could perform work in occupations such as sorter and bench assembler. [*Id.*, Tr. 25-26].

## II. ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining

whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Smith argues that the ALJ evaluated her mental health impairment improperly, including in his evaluations of medical opinions; and failed to consider her stellar work history in assessing her credibility. The Court disagrees, finding that any error committed by the ALJ is harmless, and recommends that the decision be affirmed.

**B.**

Smith first takes issue with the ALJ's consideration of the opinion of State agency consultant Daniel Blake, Ph.D. In February 2014, Dr. Blake evaluated Smith's mental impairments in terms of the listing domains, and opined that she was mildly restricted in her activities of daily living, had moderate difficulties in maintaining social functioning, had moderate difficulties in maintaining concentration, persistence or pace, and had one or two repeated episodes of decompensation, each of extended duration. [ECF No. 8-3, Tr. 93]. In assessing Smith's mental RFC, he found that Smith was moderately limited in her abilities to understand and remember detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or in proximity with others without be distracted, to complete and normal workday and workweek without

6

psychologically based interruptions, to perform at a consistent pace without unreasonable amounts or rest periods. She was also moderately limited in her abilities to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers and peers without distracting them or exhibiting behavior extremes, to maintain socially appropriate behavior, to adhere to basic standards of neatness and cleanliness, and to set realistic goals or make plans independently of others. [*Id.*, Tr. 94-94]. Dr. Blake concluded that Smith had the mental RFC "sufficient for sustained simple work activity." [*Id.*, Tr. 95].

The ALJ gave Dr. Blake's opinion great weight, but found that Smith had moderate limitations in her ability to perform activities of daily living. [ECF No. 8-2, Tr. 23]. Smith accuses the ALJ of failing to include all of the limitations assessed by Dr. Blake without explanation. [ECF No. 10, PageID 520-21]. But the only limitation that Smith specifically argues was omitted is Dr. Blake's finding that she was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. [*Id.*]. She also faults the ALJ for finding that she had no episodes of decompensation for an extended duration despite Dr. Blake's

7

finding that she had had one or two such episodes. [*Id.*; ECF No. 8-2, Tr. 21].

Smith's argument is unsustainable in light of the holding of *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014). In *Smith-Johnson*, the state agency consultant determined that the plaintiff had moderate limitations in her ability to maintain attention and concentration, and to respond to work changes, but that she could nonetheless perform simple, repetitive and routine tasks. "In other words, the limitation to simple tasks portrays the tasks that she can perform without being affected by her moderate limitations," and the ALJ was not required to add more specific limitations to the RFC. *Id.* at 436-37. *See also Harris v. Comm'r of Soc. Sec.*, No. 2:17-CV-131, 2017 WL 4769007, at *4 (S.D. Ohio Oct. 23, 2017) (state agency consultant's findings of moderate limitations in persistence, pace, attention and concentration adequately addressed in RFC precluding fast-paced production, and simple, routine work).

Here, despite finding that Smith suffered from moderate limitations, Dr. Blake concluded that she could perform sustained simple work activity. [ECF No. 8-3, Tr. 95]. Consistent with Dr. Blake's opinion, the ALJ limited Smith to unskilled, simple work with limited interaction with others and with

8

no fast-paced production work. And Dr. Blake opined that Smith could perform simple work despite stating that she had had one or two episodes of decompensation. Smith bears the burden of proving that she requires a more restrictive RFC. *Preslar*, 14 F.3d at 1110. Regardless of any omission on the part of the ALJ in failing to explain why he found no episodes of decompensation, Smith does not show that the RFC is insufficient.

    Smith argues that the ALJ should have obtained a medical opinion that was more current than Dr. Blake's, which was from February 2014. But "[t]here is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting SSR 96–6p, 1996 WL 374180, at *2 (1996)). There is no error so long as the ALJ scrutinized the entire record. *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016). In *Kepke*, the ALJ demonstrated that he provided that scrutiny by imposing limitations greater than those found by the state agency consultant. *Id.* The ALJ here found that Smith had a greater limitation in her ability to perform activities of daily living than assessed by Dr. Blake. [ECF No. 8-2, Tr. 23]. The ALJ thus demonstrated that he provided sufficient scrutiny of the entire record.

9

## C.

Smith next argues that the ALJ failed to consider the opinion of treating psychiatrist Sarva Sarvandanda, M.D. In December 2013, Dr. Sarvandanda's completed a third-party function report—the kind of which is usually submitted by claimants' family members or friends. [ECF No. 8-6, Tr. 200-07]. Dr. Sarvandanda identified himself as Smith's treating psychiatrist, and he indicated that he had known her for five years. [*Id.*, Tr. 200]. He said that Smith suffers from PTSD, depression with psychosis, and persistent thoughts of harm. [*Id.*]. Dr. Sarvandanda indicated that Smith could not work full time, and that her illnesses affected her abilities to complete tasks, concentrate, follow instructions and get along with others. [*Id.*, Tr. 201, 205]. He described Smith as being irritable, paranoid and suspicious, and stated that she does not do well with authority figures and stress. [*Id.*, Tr. 205-06]. Still, Dr. Sarvandanda noted that Smith helped care for her ill mother; opined that her illnesses did not affect her abilities to perform personal care activities; stated that Smith did not need reminders to care for her needs or take medication; stated that Smith prepared her own meals and completed most household chores, though she was often distracted and took longer to complete them; and indicated that Smith went

10

out alone, drove her car, shopped, and was able to handle her money and to successfully attend alcoholics anonymous meetings. [*Id.*, Tr. 201-04].

The ALJ described Dr. Sarvandanda's report, but did not identify it as a medical opinion or assign it weight. [ECF No. 8-2, Tr. 21]. Smith argues that the ALJ erred by failing to consider Dr. Sarvandanda's opinion or to give good reasons for not adopting it. The Court finds harmless any error resulting from the ALJ's failure to assign weight to or adopt the opinion of Dr. Sarvandanda.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 727-29; *Rogers*, 486 F.3d at 242-43. An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).

11

Here, the ALJ was not required to give controlling weight to Dr. Sarvandanda's opinion that Smith could not work full time, as that is an issue reserved solely for the Commissioner. *Kidd v. Comm'r of Soc. Sec.*, 283 F. Appx. 336, 340 (6th Cir. 2008). In fact, on this issue, Dr. Blake's opinion that Smith could still perform sustained simple work activity carried more weight than Dr. Sarvandanda's opinion that Smith could not work full time, because Dr. Blake is an expert in Social Security disability regulations. *Todd v. Comm'r of Soc. Sec.*, No. 114CV01141STATMP, 2017 WL 3835702, at *3 (W.D. Tenn. Sept. 1, 2017) ("State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.").

And whether or not the third-party function report constituted a "medical opinion" is questionable; that term refers to "judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Dr. Sarvandanda's third-party function form did describe his diagnoses and some symptoms, and did describe things that Smith does and is capable of doing despite her illnesses, but it did not specify the

12

severity of Smith's impairments or any mental restrictions. [ECF No. 8-3, Tr. 200-07]. Dr. Sarvandanda opined that Smith's illnesses affected her abilities to complete tasks, concentrate, follow instructions and get along with others, but he did not specify to what degree Smith is limited. [*Id*.].

These omissions are important because, even if the ALJ erred by failing to consider Dr. Sarvandanda's function report as a medical opinion and assigning it weight, the Court must still determine whether the error was harmless. A violation of the treating physician rule is harmless if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation." *Friend v. Comm'r of Soc. Sec.*, 375 F. Appx. 543, 551 (6th Cir.2010) (quoting *Wilson v. Comm'r of Social Security*, 378 F.3d 541, 547 (6th Cir. 2004) (internal quotation marks omitted).

The Commissioner argues that Dr. Sarvandanda's opinion is patently insufficient because it includes no specific functional limitations. [ECF No. 11, PageID 565]. The Court concurs and also finds that the ALJ appears to have made findings consistent with that opinion. As noted above, the RFC

13

accounted for Smith's moderate limitations in her abilities to complete tasks, concentrate, follow instructions and get along with others. And the ALJ specifically relied upon Dr. Sarvandanda's descriptions of what Smith does and is capable of doing in his decision. [ECF No. 8-2, Tr. 21].

Smith asserts that the ALJ could have recontacted Dr. Sarvandanda, or arranged for a consultative examination. As a general rule, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). And while ALJs were previously required to recontact medical sources if the evidence they provided was inadequate, regulations that became effective in March 2012 deem the decision to recontact to be a matter within the discretion of the ALJ. 20 C.F.R. § 404.1520(b); *Hollis v. Comm'r of Soc. Sec.*, No. 13–13054, 2015 WL 357133, at *23 (E.D. Mich. Jan. 27, 2015). "[I]f the record contains sufficient evidence, recontacting sources is unnecessary." *Id.* And "ALJs are not *required* to order consultative examinations, but merely have the discretion to do so if necessary." *McClellan v. Comm'r of Soc. Sec.*, No. CV 16-12676, 2017 WL 5054275, at *3 (E.D. Mich. Sept. 29, 2017) (emphasis in original).

14

Smith does not demonstrate that a consultative examination was necessary here. Her own psychiatrist indicated that she cared for her ill mother, and that she could care for her own personal care activities, take her medication, prepare her meals, complete household chores, drive alone, shop, and handle her own money, and that she did not need reminders. [ECF No. 8-6, Tr. 201-04]. And while Dr. Sarvandanda indicated that Smith's mental illnesses affected her abilities, Dr. Blake opined that she could perform simple work despite those moderate limitations. [ECF No. 8-3, Tr. 93-95]. The ALJ did not need more evidence in order to properly evaluate Smith's claim.

For all of these reasons, Smith has not shown that she required a more restrictive RFC, and her argument that the ALJ failed to evaluate her mental health impairment properly is without merit.

**D.**

Smith's final argument is that the ALJ failed to consider her stellar work history when finding her to be not fully credible. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. An ALJ must explain the

bases of his credibility determination, and the reviewing court should not be left to speculate as to the grounds for the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015). "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers,* 486 F.3d at 248.

In this case, the ALJ found Smith's statements regarding the severity of her impairments to be less than credible because of her daily activities (as described above), and because she did not receive treatment from April 2014 through February 2015. [ECF No. 8-2, Tr. 21, 24]. He also found that her testimony regarding having memory deficits, flashbacks, hallucinations, and side effects from her medication was not supported by the medical record. [*Id.*, Tr. 24]. And the ALJ considered Smith's demeanor during the hearing, although he gave this assessment little weight because it was merely a one-time observation. [*Id.*, Tr. 21]. Instead of challenging any of these reasons, Smith's credibility argument focuses exclusively on her contention that the ALJ failed to consider her work history. [ECF No. 10, PageID 530-35]. She argues that consideration of her stellar work history was required. [*Id.*]. This argument is without merit.

In *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016), the court held that the ALJ was not required to explicitly discuss the claimant's work history when assessing his credibility; the critical question was whether the ALJ's credibility determination was supported by substantial evidence. *Cert. denied sub nom. Dutkiewicz v. Berryhill*, 137 S. Ct. 1365 (2017). *See also Jones v. Comm'r of Soc. Sec.*, No. 4:14-CV-14417, 2016 WL 759439, at *2 (E.D. Mich. Feb. 26, 2016) ("[T]his circuit does not follow the Second Circuit's procedure of automatically according a Social Security claimant 'enhanced' or 'substantial' credibility based upon her long-standing work history.").

It is true that, in the Sixth Circuit case cited by Smith, the court reasoned in part that the ALJ did not consider that the claimant's extensive work history and attempts to work supported his credibility. *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (citing *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir.1998) and SSR 96-7P, 1996 WL 374186, *5). But the *White* court cited a host of deficiencies in the ALJ's credibility analysis; *Schaal* stated only that a good work history "may" be deemed probative of credibility; and SSR 96-7P cites a claimant's "prior work record and efforts to work" as only one of many considerations under an umbrella requirement that the credibility assessment "must be based on

17

a consideration of all of the evidence in the case record." *Id.*  This authority does not establish an ALJ's failure to explicitly consider the claimant's work history or efforts is reversible error when his credibility analysis is otherwise supported by substantial evidence.

The Court finds that substantial evidence supports the ALJ's credibility determination.  That evidence includes Dr. Sarvandanda's descriptions of Smith's continued capabilities, and Dr. Blake's opinion that she could perform sustained simple work activities despite her impairments.  Since the ALJ's credibility decision was supported by substantial evidence, there is no compelling reason to disturb his credibility analysis.

## III.  CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Smith's motion for summary judgment be [ECF No. 10] be **DENIED**; that the Commissioner's motion [ECF No. 11] be **GRANTED**; and that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD<br>United States Magistrate Judge

Dated: November 20, 2017

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 20, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
